**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| DIANA REYNOLDS and SANDRA HIGH, individually and on behalf of all others similarly situated,<br><br>                 Plaintiffs,<br><br>v.<br><br>CHW GROUP, INC., d/b/a Choice Home Warranty, a New Jersey corporation,<br><br>                 Defendant. | Case No. 17-cv-00170<br><br>Hon. John J. Tharp, Jr.<br>Magistrate Judge Young B. Kim |

**JOINT STATUS REPORT**

Plaintiffs Diana Reynolds ("Reynolds") and Sandra High ("High") (collectively "Plaintiffs") and Defendant CHW Group, Inc. d/b/a Choice Home Warranty ("CHW" or "Defendant") submit this Joint Status Report in advance of the March 20, 2018 Status Conference.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs filed their complaint on January 10, 2017 alleging that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), and its implementing regulations, 47 C.F.R. §64.1200, *et seq.*, by placing calls to Plaintiffs' cellular telephones, using an automatic telephone dialing system ("ATDS") without prior express consent. (*See* Dkt. 1, the "Complaint"). Based on the same conduct, Plaintiffs further allege that Defendant violated the National Do Not Call Registry regulations and related Illinois and Oregon state telemarketing laws. (*Id.*)

Specifically, Plaintiff Reynolds alleges that she revoked any consent to be contacted by CHW and that CHW subsequently contacted her. (*Id.* ¶ 30). Plaintiff High alleges in the Complaint

1

that she never consented to be called. (*Id.* ¶ 37). CHW claims that its records show that Plaintiff High did, in fact, provide express written consent. Both Plaintiffs seek to certify separate classes of similarly situated individuals. (*Id.* ¶¶ 89, 96, 104).

On April 7, 2017, Defendant filed its answer and affirmative defenses to the Complaint. (*See* Dkt. 15, the "Answer"). Shortly thereafter, on April 27, 2017, CHW filed a motion to set a briefing schedule regarding its anticipated motion to stay (Dkt. 27), which the Court granted the next day (Dkt. 28). On May 26, 2017, CHW filed a motion to stay the action pending a ruling by the D.C. Circuit Court of Appeals in *ACA International v. FCC*, No. 15-1211 ("*ACA International*") (Dkt. 30). That motion was fully briefed on July 14, 2017. The Court denied it on November 1, 2017, and scheduled a status hearing for November 15, 2017. (Dkt. 37). At the status hearing, Judge Tharp ordered that the Parties exchange Rule 26(a)(1) disclosures by November 29, 2017 and referred the case to Magistrate Judge Kim for discovery scheduling and supervision.

On November 20, 2017, the Court issued the following written discovery schedule:

 (1) exchange Rule 26(a)(1) disclosures by November 29, 2017, (R. 43); (2) serve written discovery requests by December 11, 2017; (3) serve answers to written discovery requests by January 15, 2018; and (4) confer about the adequacy of the discovery responses by January 26, 2018. If requests for production of documents are served, the responding party must produce or give access to the responsive documents by January 15, 2018, along with a privilege log if responsive documents are withheld. A boilerplate response that the party will produce responsive documents at a later time is not acceptable under Rule 34. Also the court will not consider general objections to written discovery requests if the court must address and rule on written discovery disputes. Parties are to file a joint status report identifying each side's written discovery issues, if any, along with the relevant written discovery responses as exhibits by February 2, 2018. If the parties do not have any disputed written discovery issues, a status report is not required. A status hearing is scheduled for February 7, 2018, at 11:00 a.m. in courtroom 1019 to discuss the written discovery issues identified and anticipated oral discovery. If the parties are interested in exploring settlement options with the assistance of this court or to simply have a settlement conference scheduled on the court's calendar (subject to cancellation upon request), they may jointly call the court to schedule a conference. The court is now scheduling matters for settlement conferences in March 2018.

(Dkt. 45.) On January 24, 2018, the parties agreed to request an extension of time to complete the discovery deadlines set forth by the Court. (Dkt. 47). The Court granted that extension request on January 25, 2018. (Dkt. 48.)

On February 22, 2018, CHW filed a motion for a two-week extension of time due to an unforeseen medical emergency concerning one of Defendant's counsel's immediate family members. (Dkt. 51.) The Court granted the request and adjusted the deadlines for the Parties to: (1) confer about the adequacy of the discovery responses by March 9, 2018; (2) file a joint status report identifying each side's written discovery issues, if any, along with the relevant written discovery responses as exhibits by March 16, 2018; and (3) set a status hearing for March 20, 2018 at 11:00 a.m. (Dkt. 52.)

The Parties have exchanged responses to interrogatories and document requests and have met and conferred in accordance with the Court's orders. The parties believe that there are disagreements on which they remain at issue and therefore require a determination by the Court.

## II. DISCOVERY DISPUTES

During the initial meet-and-confer on March 9, 2018, both Plaintiffs and Defendant agreed to serve supplemental discovery responses to cure certain issues that presently appear to be fixable/addressable. With respect to these issues, the parties have agreed that they will review the supplemental responses and conduct a subsequent meet-and-confer in a timely fashion to determine whether the identified defects have been cured or whether the Court's involvement will be necessary. In the meantime, however, the parties were also able to confirm at the meet-and-confer that, with respect to certain other issues set forth below, an impasse has been reached, and the parties are unable to resolve their disputes absent the Court's involvement. The parties Written Discovery Requests and Responses are attached hereto as Group Exhibit A.

3

## A.     PLAINTIFF'S POSITION

In Plaintiffs' view, CHW has failed to take its discovery obligations seriously. Over a year has passed since the filing of the case and CHW has yet to provide any information needed to identify potential class members at all. Instead, CHW (and its counsel) have repeatedly delayed providing any responses only to eventually offer seriously misplaced objections.   Plaintiffs' counsel specified the deficiencies in CHW's written discovery responses and document production. See "Plaintiff's February 22, 2018 Discovery Dispute Letter," attached hereto as Exhibit B. As set forth above, CHW has agreed to attempt to resolve certain of those deficiencies[1] via supplemental responses, and Plaintiffs reserve the right to bring such deficiencies to the Court's attention should CHW's supplemental responses remain deficient. With respect to other discovery, however, particularly discovery needed to identify class members, CHW's deficiencies are ripe for Court resolution.

### 1.     *CHW's refusal to produce information and documents necessary to identify Class members (I.e., Interrogatories Nos. 4, 6, 7, 14, 17; Requests to Produce Nos. 4, 5, 6, 7, 15, 24, and 33)*

The first group of critical information and documents that CHW has refused to provide relates to information Plaintiffs need to identify potential Class members. This includes requests seeking the identity of persons called where CHW obtained the persons' leads from the same source—CHW's website[2]—as the leads that provided information about the Plaintiffs (Rog No. 4; RTP No. 4 and No. 33), which of those persons were called on their cellphones (Rog No. 6), the identity of all persons whose leads came from the same source as Plaintiffs' leads who were called

---

[1] Such deficiencies include, *inter alia*, CHW's failure to, as required by this Court's Order of November 20, 2017, provide a privilege log or to produce documents (as opposed to a statement that documents would be produced at some point in the future).

[2] Plaintiff alleges that the consent CHW relies on from its website is fatally deficient.

for the same purpose and using the same dialing equipment as the equipment used to call Plaintiffs (Rog No. 14 and No. 17; RTP No. 15), and the identity of persons called at least once more than 30 days after telling CHW to stop calling (RTP No. 24).

CHW has produced a total of **seven** pages of documents thus far—none of which bear on the class allegations at all. CHW objects to each of these class-related requests on the same grounds: that they are unduly burdensome (though no burden is established) and that CHW cannot comply without suffering undue hardship.[3] These objections are unsupported by any facts or other evidence and amount to improper attempts to block the Plaintiffs from evidence they need to satisfy the requirements of Rule 23. The only hardship CHW ostensibly would suffer is having to participate in discovery, which is insufficient.

To be sure, Plaintiffs' counsel offered to resolve such objections by proposing to postpone the actual identification of class members until after certification is granted if Defendant agreed to provide the total number of such persons that Plaintiffs have requested be identified, stipulate that CHW has the names and contact information for such persons and would be willing to produce the same following class certification, and stipulate that it waives any objection to class certification based on any absence of testimony or records from other putative class members. (*See* Exhibit B.) Defendant refused this compromise, which means CHW refuses to provide any data needed to identify class members (*i.e.*, the people who were called where CHW obtained their leads from the same source, and were called for the same purpose using the same equipment as the Plaintiffs), yet also wishes to retain the ability to object to class certification based on Plaintiff's supposed inability to identify class members. The Court should see through such gamesmanship.

---

[3] Indeed, as set forth further below, RTP No. 29 specifically asked for any documents sufficient to substantiate any claim of undue burden in responding to any discovery request—CHW simply objected to this request as well.

5

**DEFENDANT'S RESPONSE:**

In Defendant's view, many of Plaintiffs' discovery demands which purport to seek class discovery are misguided, vexatious, and designed solely to harass CHW. The Complaint presents two discrete issues:

1) Whether Plaintiff Reynolds revoked her prior consent to be called by Defendant, and whether Defendant failed to comply with that request in a reasonable time; and

2) Whether Plaintiff High did or did not consent to be called by Defendant, despite the documents in CHW's possession showing that she did.[4]

For each of these Plaintiffs, CHW produced all the documents in its possession regarding Plaintiffs, which includes all the information they provided to CHW on its website when they consented to be called, and a log of each call that CHW made to them. The call log shows the result of each call in abbreviated terms. Importantly, none of the Plaintiffs' call logs contain the letters "DNC," which stands for "Do Not Call." That means that, based on Defendants' records, neither of these Plaintiffs ever requested not to be called again by Defendants.

Now, in discovery, Plaintiffs have put forth a plethora of exhaustive and overly burdensome discovery demands regarding every single person that Defendant ever called that consented to be called in the same manner that Plaintiffs did (*i.e.*, by requesting a quote on Defendant's website, which they can only do if they agree to language that expressly authorized

---

[4] In response to Defendant's request for admissions, High admitted that all the personal information that she submitted on CHW's website was accurate, but she inexplicably denied requesting a quote on CHW's website, which is the only way CHW could obtain that information. Recently, in response to Defendants' interrogatories, High now ambiguously claims that she did not contact CHW "proactively." This is one of the multitudes of vague and insufficient responses Plaintiffs' counsel agreed to clarify. Once this matter is clarified, it may and should render High's claim that she never consented to be called entirely moot.

Defendant to call them by phone). Accordingly, Plaintiffs claim this is necessary "class discovery." It is not.

In order to constitute class discovery, the discovery sought must be necessary to demonstrate that Plaintiffs meet the requirements of Federal Rule 23. Here, none of the so-called class discovery that Plaintiffs seek has any bearing on the Federal Rule 23 requirements. For Reynolds' claims, these documents have no bearing on whether she or others were called after they claimed to revoke their consent. The records merely document the time of the calls, and the result. If the result is DNC, CHW does not initiate another call.

Underscoring the irrelevance of these records, and the inappropriateness of class certification in general, it is well settled that the current interpretation of "consent revocation" for the purposes of the TCPA is that consumers can revoke consent "using any reasonable method including orally or in writing," which is a totality of circumstances analysis. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,* 30 F.C.C. Rcd. 7961, 7996 (July 10, 2015). Accordingly, the adjudication of this issue is a highly fact specific inquiry that cannot be resolved by generalized proofs like those Plaintiffs seeks.

For High's claims, which are even more tenuous because the records show she consented to be called, nothing in CHW's records have any bearing on her claim that she did not. In fact, had she not consented to be called, CHW would have had no way of obtaining the personal information she submitted, which not only included her name, number and location, but also the specific products of CHW that she was interested in purchasing.

Accordingly, Plaintiffs' request for additional documents under the guise of "class discovery" is nothing but a meritless and misguided fishing expedition designed solely to harass and unduly burden Defendant.

**2.** ***CHW's refusal to make its dialing equipment available for inspection or to provide documents sufficient to identity its dialing equipment's functionality (Rtp. Nos. 14, 33).***

CHW also refuses to allow Plaintiffs to inspect its dialing equipment used to make the calls in this case. A critical element in this TCPA lawsuit asks whether CHW placed the calls at issue using an automatic telephone dialing system ("ATDS"). Indeed, CHW moved to stay based on the assertion that the D.C. Circuit is anticipated to at some point this year issue a key ruling on the definition of an ATDS and whether it covers CHW's equipment. To determination whether CHW's equipment qualifies under any definition, Plaintiffs need to review and inspect the dialer that CHW used. Despite this, CHW has yet to produce user or instructional manuals for its dialing equipment (which CHW claims is Avaya IP Office) and refuses to allow Plaintiffs' counsel and their expert to inspect the equipment. CHW offers no grounds for denying such an inspection. Rule 34 allows for the inspection of tangible things—the dialing equipment plainly qualifies. As such, and absent a stipulation from CHW that its dialing equipment constitutes an ATDS under the TCPA, an inspection of the dialing equipment is wholly appropriate and necessary.

**DEFENDANT'S RESPONSE:**

Plaintiffs' request, presented as a document request, that it be allowed to enter CHW's private property and inspect its private and proprietary property in New Jersey is entirely inappropriate, particularly at this stage in this litigation. Not only would an inspection by lawyers, and presumably experts, create a severe and unnecessary disruption to CHW's business, Plaintiffs have set forth no evidence whatsoever that such an inspection is necessary, or that they cannot obtain the information they seek through other less intrusive forms of discovery, such as interrogatories, document requests, or depositions. In fact, Plaintiffs have not introduced and

admittedly do not have a shred of evidence to suggest that CHW uses a so-called "auto dialer," which is the only reason they seek an inspection.

Not only is this overly intrusive request nothing but a fishing expedition, but the numerous less intrusive methods of discovery are not even complete. Thus far, CHW has already responded to Plaintiffs' request for the names of its calling equipment and sales software and, during the parties' meet-and-confer, agreed to supplement its production with any user manuals for this equipment in its possession or, if it has none, direct Plaintiffs to where such information can be found online.

Moreover, even when other discovery is complete, such an inspection should only be considered if Plaintiffs were able to somehow prove Defendant provided them with inaccurate information, which needed to be cross-referenced with an inspection.

Further, Plaintiffs did not even serve a proper notice of discovery and inspection pursuant to Rule 34, and instead included its demand to inspect CHW's equipment (*i.e.*, computers and software systems) in its document requests.

### 3. *Additional discovery issues on which the Parties remain at-issue.*

As stated above, while the parties continue to meet-and-confer and will be exchanging supplemental responses in an attempt to cure certain of the deficiencies identified and discussed during their meet and confer, the parties have also confirmed that they are at issue on (and need the Court's determination regarding) the following requests:

- <u>Request to Produce No. 20</u>: This request seeks Documents supporting CHW's assertion, if any, that Plaintiffs are inadequate to serve as Class Representatives. This is plainly relevant for Rule 23 purposes. CHW should produce such documents without delay or confirm that no such responsive documents exist.

9

**DEFENDANT'S RESPONSE:** Defendant has yet to determine what, if any, documents bear on Plaintiffs' adequacy as class representatives other than those already produced. The reasons it cannot fully make this determination is because Defendant has yet to receive any semblance of adequate discovery from Plaintiffs, nor have there been any depositions. Accordingly, this request is simply premature. Once Plaintiffs' counsel cures the multitude of deficiencies in its discovery responses, and depositions are conducted, then Defendant will be in an adequate position to assess what, if any, documents are responsive to this request. This request is improper as written because it requires the responding party to make a subjective determination as to what documents have a bearing on Plaintiffs' claims that they are adequate class representatives, and thus, the request is ambiguous. Accordingly, all of the Documents supporting this contention would be in either Plaintiffs' possession, custody, or control, or in the public domain. As such, CHW will supplement and produce any documents that come into its or its attorneys', possession, custody, or control supporting this contention.

- Request to Produce No. 26: This request seeks Documents supporting CHW's assertion, if any, that Plaintiffs' counsel are inadequate to serve as Class Counsel. This is also relevant for Rule 23(a)(4) purposes. CHW should produce such documents without delay or state it doesn't contend Plaintiffs' counsel are inadequate or that no such documents are currently in its possession.

    **DEFENDANT'S RESPONSE:** There is no legitimate discovery dispute regarding this request. First, CHW does not and would not possess any documents regarding Plaintiffs' counsel, much less any documents regarding its fitness as counsel. Second, this request is improper because it requires the responding party to make a

10

subjective determination as to what documents have a bearing on Plaintiffs' counsels' fitness as counsel, and thus, the request is ambiguous. Third, any such documents would necessarily be in Plaintiffs' counsels' possession or available in the public domain. Simply put, Plaintiffs have no legitimate need to request from Defendant information regarding its own counsels' fitness as counsel. Finally, it is Plaintiffs' counsels' burden to demonstrate its own fitness as counsel, not Defendants to prove otherwise. To that end, Defendant, hereby requests that Plaintiffs' counsel be ordered to produce:

1. All Documents that Plaintiffs' counsel intends to introduce to support the contention that they would be adequate counsel for the purported classes in this matter.

2. Each court or judicial opinion in which a determination was made regarding the adequacy of Plaintiffs' counsel serving as counsel to a purported class of plaintiffs.

3. Documents sufficient to identify each matter in which the adequacy of Plaintiffs' counsel to serve as class counsel was challenged by one or more of the defendants therein.

- Request to Produce No. 29: This request seeks Documents supporting CHW's supposed undue burden in responding to Plaintiffs' discovery requests. CHW has made a boilerplate burdensome objection to essentially every request. It should either withdraw those objections or provide documents substantiating its claims of undue burden.

Put simply, given the "thin" nature of Defendant's responses to date (7 total pages combined with objections that violate the plain language of this Court's express Orders regarding privilege logs and rolling productions), CHW should be compelled to provide complete responses to the above without further delay.

**DEFENDANT'S RESPONSE**: As Defendant explained to Plaintiffs' counsel, this request is improper because:

(1) it does not seek documents relevant to the claims and defenses in this case;

(2) the parties are currently meeting and conferring regarding the scope of necessary discovery, which may render moot many, if not all of, Defendant's over burdensome objections; and

(3) as a result, Defendant has yet to search for or compile specific documents to address these issues.

Suffice it to say, if Defendant intends to rely on specific documents to support an over-burdensome objection, such documents will be provided in a timely manner. Further, as discussed with counsel during its meet and confer, aside from the overly broad discovery that Plaintiffs seeks, CHW is not presently withholding any documents based on its objections or any purported privilege. Accordingly, any discussion regarding Request to Produce No. 29 and CHW's objections does not require the Court's attention at this juncture.

B.      **DEFENDANT'S POSITION**

1.      ***Plaintiffs' Refusal to Conduct a Search for and Produce Documents Relevant to this Action***

Plaintiffs refused to respond to Defendant's Document Requests Nos. 4, 6-11 on the flawed premise that documents evidencing communications between the Plaintiffs' and various third-parties regarding CHW and the allegations the Complaint are not relevant to the action. *See* Defendant's March 6, 2018 Discovery Deficiency Letter, attached hereto as Exhibit C. Naturally, all non-privileged communications that relate to this action must be searched for and produced, regardless of whether they communications with third parties. Such communications could be exceedingly relevant to a variety of issues, including, but not limited to:

1) Whether Plaintiffs' claims are bona fide;

2) Whether Plaintiffs requested quotes on CHW's website merely to create a predicate for suit;

3) Whether Plaintiffs were truly interested in CHW's products; and

4) Whether the allegations in the Complaint are consistent or inconsistent with statements Plaintiffs made to third parties.

This is obviously not an exhaustive list. But it should make clear that Plaintiffs have no legitimate basis not to search for or produce these documents if they intend to proceed with this litigation.

### PLAINTIFFS' RESPONSE

CHW appears to be on a fishing expedition. Without any evidence to suggest that this case is some type of fabrication at all, and no description of what constitutes "bona fide", CHW demands any communications either Plaintiff may have had with any third parties. No communications with third parties bear at all on whether CHW's website was sufficient under the TCPA to secure prior express written consent. This Court should refuse CHW's request to be permitted access to such overbroad communications that bear no relation on the claims or defenses.

### 2. *Plaintiffs' Boiler Plate Objections to CHW's Document Requests*

While Plaintiffs have agreed to supplement many of their responses, they have not agreed to withdraw their numerous boilerplate objections, including their objections that the requests are "vague, overbroad, and [are] premature," despite then representing that documents will be produced. (*See* Document Request Nos. 1-3, 5, 16-18, 21, 22). Plaintiffs must produce documents responsive to these requests, as well as the requests noted above, as the documents requested are undeniably relevant to the action. Accordingly, Plaintiffs must confirm—that all responsive documents have been produced and that none are being withheld based on any purported privilege, or any of the boilerplate objections interposed.

**PLAINTIFFS' RESPONSE:** Defendant has made, and refuses to withdraw, its own boiler-plate objections. Plaintiffs will be producing supplemental documents. Plaintiff raised

specific objections to each of Defendant's requests. This appears to simply be an effort by CHW to raise another issue.

Respectfully Submitted,

**DIANA REYNOLDS AND SANDRA HIGH**, individually and on behalf of all others similarly situated,

Dated: March 16, 2018                  /s/ Patrick H. Peluso

One of Plaintiff's Attorneys


Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso**
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
(720) 213-0675

Blake Dugger*
Law Offices of Stefan Coleman, P.A.
1011 W. Colter St. #236
Phoenix, AZ 85013
(602) 441-3704
Email: blake@stefancoleman.com

Steven Owen Ross
Attorney at Law
1235 South Prairie Avenue
Suite 1503
Chicago, IL 60605
(312) 566-4170
Email: soratty1@aol.com

Stefan Coleman
Law Offices of Stefan Coleman, P.A.
201 S Biscayne Blvd, 28th Floor
Miami, FL 33131
(877) 333-9427
Email: law@stefancoleman.com

*Pro hac vice*

14

\*\*_Pro hac vice_ application to be filed

**DEFENDANT CHW GROUP INC.,**

Dated: March 16, 2018  By:  /s/ Andrew J. Urgenson
Andrew J. Urgenson (_pro hac vice_)
OVED & OVED LLP
401 Greenwich Street
New York, NY 10013
Tel. 212.226.2376

/s/ John M. Dickman
John M. Dickman
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
155 North Wacker Drive, Suite 4300
Chicago, IL 60606
Tel. 312.558.1255

Attorneys for Defendant CHW Group, Inc.

15